## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

ROBERT RAY JOBE,

      Plaintiff,

v.                                                                CIVIL ACTION NO. 3:19-cv-00234

ANDREW SAUL,[1]
Commissioner of Social Security,

      Defendant.


## **PROPOSED FINDINGS AND RECOMMENDATION**

      Plaintiff Robert Ray Jobe ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f.  By standing order entered on January 4, 2016, and filed in this case on April 1, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 4.)  Presently pending before this Court are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 9) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 10).

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).  *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 43 years old at the time of his alleged disability onset date and 46 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 381, 383.)[2] He completed paramedic training. (*Id*. at 426.) Most recently, he worked as a bartender, and he has also been employed as a paramedic. (*Id*. at 61–64) Claimant alleges that he became disabled on June 23, 2015,[3] due to deep vein thrombosis in his lower extremities, spinal stenosis, osteoarthritis, Factor V Leiden, pulmonary embolisms, high blood pressure, diabetes, depression, a back injury, nasopharyngeal stenosis, and abdominal hernias. (*Id*. at 417, 425.)

Claimant filed his most recent applications for DIB and SSI benefits on or about September 21, 2015. (*Id*. at 381–88.) His claims were initially denied on March 9, 2016, and again upon reconsideration on May 25, 2016. (*Id*. at 160–211, 258–81, 286–99.) Thereafter, on June 20, 2016, Claimant filed a written request for hearing. (*Id*. at 300–01.) An administrative hearing was held before an ALJ on January 25, 2018, in Huntington, West Virginia, with the ALJ appearing from Baltimore, Maryland. (*Id*. at 40–74.) On March 2, 2018, the ALJ entered an unfavorable decision. (*Id*. at 9–39.)

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 8.
[3] Claimant initially gave his alleged onset date as July 1, 2014. (Tr. at 381, 383.) He later moved to amend his alleged onset date to June 23, 2015. (*Id*. at 417; *see id*. at 13.)

Claimant then sought review of the ALJ's decision by the Appeals Council on March 15, 2018. (*Id.* at 376–80.) The Appeals Council denied Claimant's request for review on February 12, 2019, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–5.)

Claimant timely brought the present action on March 29, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 7) and a transcript of the administrative proceedings (ECF No. 8). Claimant subsequently filed his Brief in Support of Judgment on the Pleadings (ECF No. 9), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 10). As such, this matter is fully briefed and ready for resolution.

### B. Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments. The parties have adopted the ALJ's summary of the medical evidence, so the undersigned does not repeat that summary here. (ECF No. 9 at 5; ECF No. 10 at 5; *see* Tr. at 12–32.)

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds

3

through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the

listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the

5

claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision.  (Tr. at 16.)  She further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability.  (*Id.*)  She found that Claimant's "s/p bilateral iliofemoral and inferior vena cava; history of deep vein thrombosis ('DVT'); diabetes mellitus with neuropathy; obstructive sleep apnea ('OSA'); cervical spondylosis; lumbar facet syndrome and spondylothesis; left sacroiliac joint syndrome; left shoulder impingement syndrome and labral tear; carpal tunnel syndrome; small disc protrusion at T6-T7 and T7-T9; obesity; major depressive disorder ('MDD'); opioid use disorder; personality disorder; and post-traumatic stress disorder ('PTSD')" constituted "severe" impairments.  (*Id.*)  However, she found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 17–21.)  Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform sedentary work . . . except he can lift and carry ten pounds occasionally, and ten pounds frequently," "can stand and walk for three hours and can sit for six hours," "can occasionally stoop, crouch, but never kneel and crawl," "can occasionally climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds."  (*Id.* at 21.)  The ALJ further found that Claimant "can occasionally reach in all directions and overhead with the left upper extremity" and "can frequently handle and finger bilaterally."  (*Id.*)  She concluded that Claimant "needs to avoid concentrated exposure to cold and hot weather extremes, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, as well as workplace hazards."  (*Id.*)  She noted that Claimant "needs a cane to ambulate."  (*Id.*)  In

addition, the ALJ found that Claimant "can perform simple, routine, repetitive work, and can occasionally interact with supervisors, coworkers, and the public." (*Id*.)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id*. at 30.) She noted that Claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id*. at 30–31.) Because the ALJ determined that Claimant was unable to perform the full range of sedentary work, she enlisted a VE to aid in her finding that Claimant is capable of working as a returning clerk, addressing clerk, or document preparer. (*Id*. at 31.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from June 23, 2015, through the date of this decision." (*Id*. at 32.)

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id*. (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that

of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.    ANALYSIS

Claimant argues that the ALJ erred in finding that his hypertension, left knee sprain, mild restrictive pulmonary disease, and nasopharyngeal stenosis were non-severe medically determinable impairments and that his osteoarthritis of the cervical spine, diabetic retinopathy, asthma, chronic obstructive pulmonary disease, and gout were not medically determinable impairments. (ECF No. 9 at 5–6.) He further asserts that the ALJ improperly disregarded his subjective complaints about his pain and other symptoms. (*Id.* at 6.) Finally, Claimant contends that his carpal tunnel, use of a cane, and mental impairments preclude sedentary work under SSR 96-9p. (*Id.* at 7–8.) Claimant asks this Court to award him benefits or to remand this matter to the ALJ. (*Id.* at 8.) The Commissioner responds that the ALJ correctly determined that several of Claimant's alleged impairments were either not severe or not medically determinable and nonetheless considered their effects on Claimant's ability to work in formulating his RFC. (ECF No. 10 at 8–11.) The Commissioner further argues that the ALJ correctly found that Claimant's "complaints of disabling pain and work-preclusive limitations were inconsistent with his routine and conservative longitudinal treatment history, his largely unremarkable physical and mental status findings, and several medical opinions." (*Id.* at 12–14.) He also asserts that the ALJ complied with SSR 96-9p by utilizing a VE to testify about the availability of work for an individual with Claimant's RFC. (*Id.* at 14–16.)

*A. Severity of Claimant's Impairments*

Claimant argues that the ALJ incorrectly determined that his hypertension, left knee sprain, mild restrictive pulmonary disease, and nasopharyngeal stenosis were non-severe impairments.  (ECF No. 9 at 5.)  An impairment is considered severe if, on its own or in combination with other impairments, it "significantly limits [the claimant's] physical or mental ability to do basic work activities" and is expected to do so "for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1520(b)(4)(ii), (c), 416.920(b)(4)(ii), (c); *id.* §§ 404.1509, 416.909.  Stated another way, an impairment is sufficiently severe if it has "more than a minimal effect on the person's physical or mental ability to perform basic work activities."  *Killian v. Colvin*, No. 8:12-cv-921-MGL, 2013 WL 4853879, at *10 (D.S.C. Sept. 10, 2013) (report and recommendation of magistrate judge).

Here, the ALJ explained, citing to medical evidence of record, that Claimant's hypertension was not severe because he was "prescribed medication" and "his blood pressure has been under control frequently at medical appointment [sic]."  (Tr. at 16–17.) "If an ailment is controlled by medication such that it does not cause work-related limitations, the ailment is not severe."  *Springer v. Astrue*, No. 1:11-cv-03407, 2013 WL 3771329, at *5 (D. Md. July 16, 2013) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)); *Lester v. Colvin*, No. 1:13-cv-759, 2015 WL 1458139, at *5 (M.D.N.C. Mar. 30, 2015) ("Where, as here, an ailment is controlled by medication such that it does not cause work-related limitations, it is not severe." (citing *Gross*, 785 F.2d at 1166)).

The ALJ also explained that Claimant's left knee sprain was not severe because it did "not require[] ongoing treatment."  (Tr. at 17.)  That fact indicates that an impairment is not severe.  *See Love v. Astrue*, No. 7:07-cv-00126, 2008 WL 2273616, at *6 (W.D. Va. May 30, 2008) ("[T]he Commissioner did not err by considering Love's lack of ongoing

10

treatment for his depression and nervousness when determining whether his mental impairments are severe."), *adopted by* 2008 WL 2486512 (W.D. Va. June 19, 2008). The same is true for Claimant's nasopharyngeal stenosis, which the ALJ found not severe because despite "multiple . . . surgeries," Claimant "reported in January 2016[] he had not follow-up [sic] on treatment." (Tr. at 17.) *See McGinnis v. Colvin*, No. 1:14-cv-151, 2015 WL 7767853, at *29 (N.D.W. Va. Nov. 10, 2015) ("This was the last reported treatment with Dr. Singh—or any urologist for that matter—which leads credence to the conclusion that Plaintiff's incontinence was not that severe since Plaintiff did not seek out more treatment." (citing *Waller v. Colvin*, No. 6:12-cv-00063, 2014 WL 1208048, at *8 (W.D. Va. Mar. 24, 2014))), *adopted by* 2015 WL 7779230 (N.D.W. Va. Dec. 2, 2015).

Finally, the ALJ explained that Claimant's mild restrictive pulmonary disease was not severe because "his respiratory examinations during the period at issue have been normal, without shortness of breath." (Tr. at 17.) When the medical evidence of record indicates that "the condition ha[s] no more than a minimal effect on [the claimant's] ability to do basic work activities" and related testing and examination findings are normal, substantial evidence supports the ALJ's conclusion that the condition is not severe. *Stigall v. Colvin*, No. 3:14-cv-666, 2015 WL 5836002, at *14 (E.D. Va. Sept. 30, 2015) (report and recommendation of magistrate judge).

Put simply, the ALJ found for permissible reasons that each of these four impairments was not severe and cited medical evidence of record in support of her conclusions. Notably, Claimant has not cited a single piece of evidence or even presented any argument to rebut the ALJ's reasoning. (ECF No. 9 at 5–6.) He merely states that his "impairments in combination preclude even a reduced range of sedentary work when the vocational impact of same are fairly and reasonably considered" but fails to elaborate

on what the claimed "vocational impact" of these impairments might be.  (*Id.*)  Claimant "bears the burden of proving that an impairment is severe."  *Moore v. Colvin*, No. 2:14-cv-09913, 2015 WL 1481636, at *14 (S.D.W. Va. Feb. 4, 2015) (citing *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983)), *adopted by* 2015 WL 1481732 (S.D.W. Va. Mar. 31, 2015); *Mizzell v. Colvin*, No. , 2014 WL 958662, at *7 (D.S.C. Mar. 10, 2014) (report and recommendation of magistrate judge) ("The claimant bears the burden at [step two of the sequential evaluation process] to show that she has a severe impairment." (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987))); *McPherson v. Astrue*, No. 3:10-cv-01075, 2011 WL 3664995, at *13 (S.D.W. Va. Aug. 19, 2011) (The claimant "bears the burden of supplying medical evidence to the Commissioner which establishes the severity of [his] impairments.").  He has not met it here.  As such, the undersigned **FINDS** that the ALJ properly determined that Claimant's hypertension, left knee sprain, mild restrictive pulmonary disease, and nasopharyngeal stenosis were non-severe impairments.

Claimant also argues that the ALJ erred by finding that his osteoarthritis of the cervical spine, diabetic retinopathy, asthma, chronic obstructive pulmonary disease, and gout were not medically determinable impairments.  (ECF No. 9 at 5–6.)  "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §§ 404.1521, 416.921.  Here, the ALJ noted that Claimant's "osteoarthritis of the cervical spine was diagnosed by a physician's assistant, which is not an acceptable medical source."  (Tr. at 17.)  Indeed, "a physician's assistant is not an acceptable medical source of the type necessary to establish a medically determinable impairment."  *Hill v. Colvin*, No. 2:13-cv-637, 2015 WL 459186, at *7 (E.D. Va. Feb. 2, 2015) (report and recommendation of magistrate judge).  The ALJ also observed, "The record does not contain vision testing which supports a diagnosis of diabetic retinopathy,

and there was no evidence of such during [Claimant's] January 2016 consultative examination." (Tr. at 17.) Similarly, the ALJ explained that despite some indication that Claimant had "a past medical history" of asthma and gout and his chronic obstructive pulmonary disease "was listed in discharge instructions prior to the period at issue," Claimant's "medical records do not reflect these impairments have been diagnosed by an acceptable medical source during the relevant period at issue." (*Id.*)

At step two of the sequential evaluation process, the ALJ is tasked with determining whether the claimant "ha[s] a severe medically determinable physical or mental impairment during the relevant time period—from his alleged disability onset date [to] the date last insured." *Bullock v. Colvin*, No. 3:15-cv-00009-RJC, 2017 WL 603298, at *3 (W.D.N.C. Feb. 14, 2017). At this step, Claimant bears the burden to show that he has a medically determinable impairment. *Wampler v. Saul*, No. 1:19-cv-92-MOC, 2019 WL 6404403, at *4 (W.D.N.C. Nov. 27, 2019) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Again, however, he fails to cite to any portion of the record that he asserts is contrary to the ALJ's findings. (ECF No. 9 at 5–6.) Accordingly, the undersigned **FINDS** that the ALJ properly determined that Claimant's osteoarthritis of the cervical spine, diabetic retinopathy, asthma, chronic obstructive pulmonary disease, and gout were not medically determinable impairments.

Moreover, even if the ALJ should have concluded that these other alleged impairments were severe medically determinable impairments, "failing to list a severe impairment at the second step of the process generally is not reversible error as long as the process continues and any functional effects of the impairment are appropriately considered during the later steps." *Blevins v. Colvin*, No. 5:15-cv-14240, 2016 WL 6987169, at *9 (S.D.W. Va. Sept. 16, 2016), *adopted by* 2016 WL 6988502 (S.D.W. Va.

Nov. 28, 2016).  The ALJ in this case explained that she considered the alleged impairments that she found were not severe or not medically determinable "when limiting [Claimant] to a reduced range of sedentary work."  (Tr. at 17.)  When the ALJ "state[s] that the whole record was considered . . . absent evidence to the contrary, we take her at her word."  *Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014).  Claimant has not offered any such contrary evidence here.  (*See* ECF No. 9 at 5–6.)  And the ALJ's RFC assessment makes clear that her statement was true: she mentioned Claimant's testimony about "left leg pain," "foot pain from gout," and "difficulty breathing and with exertion due to a history of sinus surgeries."  (Tr. at 22.)  She also discussed the medical evidence related to Claimant's "cervical impairment" and the complications from his diabetes.  (*Id*. at 23–25.)  Therefore, the undersigned **FINDS** that the ALJ committed no reversible error.

B. *Claimant's Subjective Complaints*

Claimant also argues that the ALJ "failed to follow the guidelines established in *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), and discuss in a meaningful way why she disregarded [Claimant's] subjective complaints."  (ECF No. 9 at 6.)  He contends that "his subjective complaints of pain and other limitations are sufficient to establish that he is disabled in as much as his underlying impairments are capable of producing the degree of pain and other limitations he alleges."  (*Id*.)  But Claimant's argument takes *Hines* beyond its stated holding.  *Hines* stands for the proposition that in order to prove disability, a claimant need not supply "objective clinical evidence of the existence and intensity of [his] pain."  453 F.3d at 564; *see Karnes v. Colvin*, No. 6:12-cv-00053, 2015 WL 1477891, at *4 (W.D. Va. Mar. 31, 2015) ("An ALJ may not require objective evidence of pain before crediting the sincerity of a plaintiff's subjective complaints.").  Rather, as long as he establishes a medically determinable impairment that can be expected to cause

his alleged symptoms, he may "rely exclusively on subjective evidence to prove . . . that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day." *Hines*, 453 F.3d at 565 (footnote omitted).  But the *Hines* court made clear that "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id.* at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)).

To the extent Claimant asserts that he should be adjudicated disabled solely because he complains of pain and other symptoms that are expected to be caused by his medically determinable impairments—regardless of other record evidence suggesting that his pain and other symptoms are not as disabling as he claims—that argument is plainly incorrect. *See id.*  The ALJ may not require objective evidence of the claimant's subjective complaints of pain and other symptoms, but she nonetheless "must assess whether [those] statements are consistent with the record as a whole." *Vass v. Berryhill*, No. 7:17-cv-87, 2018 WL 4737236, at *6 n.4 (W.D. Va. June 12, 2018), *adopted by* 2018 WL 4704058 (W.D. Va. Sept. 30, 2018).  The *Hines* court concluded that the ALJ in that case improperly rejected the claimant's subjective complaints of pain as inconsistent with the record when "the record, when read as a whole, reveal[ed] no inconsistency."  453 F.3d at 565.

Here, the ALJ explained that Claimant's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent [with the record] because findings on [his] physical and mental health examinations have been mild to

moderate, and the record does not support the extent of physical and mental limitations alleged." (Tr. at 22.) She noted that at the hearing, Claimant testified about experiencing pain in his back, hips, and left leg, as well as "leg weakness." (*Id.*) The ALJ then reviewed the medical evidence related to Claimant's spine and lower extremities. (*Id.* at 22–23, 25.) She explained that he suffered from deep vein thrombosis, which caused "massive swelling in his bilateral lower extremities," and that he underwent a procedure to treat the deep vein thrombosis in 2013. (*Id.* at 22.) She noted that a July 2014 ultrasound showed that Claimant's deep vein thrombosis "had resolved" and that his vascular surgeon recommended wearing compression socks for two years and taking anticoagulation medication. (*Id.*) The ALJ further observed that Claimant "has not been hospitalized during the period at issue for his [deep vein thrombosis] . . . or experienced complications related to taking his medication." (*Id.*) She also noted that Claimant "had lower extremity edema noted during a hernia evaluation in June 2016," but "the overall record reflects he has not generally had edema in his lower extremities." (*Id.* at 22–23.) This led the ALJ to conclude that Claimant's deep vein thrombosis "has been adequately controlled during the relevant period." (*Id.* at 23.)

As to Claimant's spine, the ALJ explained that Claimant initially injured his back in February 2004 but had "returned to work at full capacity" and "reached maximum medical improvement" with "a 5% range of motion deficit" by July 2006. (*Id.*) She noted that July 2012 imaging reflected a "small disc protrusion" in Claimant's thoracic spine, and a March 2014 x-ray revealed "disc space narrowing and mild spondylolisthesis" in Claimant's lumbar spine. (*Id.*) She observed that Claimant sought pain management for his back pain in 2014 and 2015, and "conservative treatment and injections were discussed." (*Id.*) She also described the findings from a March 2014 physical

16

examination, which revealed "some limited range of motion in his lumbar [spine]" and pain, but he "walked with a normal gait, and had full strength in his extremities." (*Id.*) Finally, the ALJ observed that there were no pain management treatment records "since the amended alleged disability onset date." (*Id.*)  She concluded that Claimant's spinal issues "have remained stable as [he] has not sought aggressive treatment, and physical examinations [from the relevant period] reflect generally normal findings." (*Id.*)  She also noted that he made "limited complaints" to his providers about pain.  (*Id.*)

Finally, the ALJ reviewed the record as it relates to Claimant's neuropathy but noted "limited physical findings" regarding that condition.  (*Id.* at 25.)  She noted that Claimant reported at a January 2016 consultative examination that he was experiencing "neuropathy in his lower extremities, with constant pain, numbness, and tingling." (*Id.*) However, the ALJ observed that "there was no evidence of neuropathy noted at examinations in November 2015, February 2016, and in January and April 2017." (*Id.*) She summarized that Claimant's "treatment for diabetes and neuropathy has been limited to diabetes medication adjustments at office visits, without the need for more aggressive treatment." (*Id.*)

With respect to Claimant's mental impairments, the ALJ noted that Claimant testified that he was unable to "perform activities he enjoys," that "he does not like being in crowds," and that he "has difficulty sleeping with nightmares due to [post-traumatic stress disorder] from his former job as a paramedic." (*Id.* at 22.)  But her review of Claimant's mental health treatment records revealed "no significant change in [Claimant's] mental impairments since his amended alleged disability onset date." (*Id.* at 27.)  She observed that despite Claimant's testimony, "his mental health treatment during the period at issue reflects his mental impairments were adequately controlled

through therapy, and quarterly visits to his psychologists." (*Id.*)  The ALJ also noted that Claimant's "mental impairments[] and opioid use disorder were generally controlled on medication, with few reports of exacerbation of symptoms," and that he did "not require[] psychiatric hospital care during the relevant period, nor have his treatment providers referred him for such care." (*Id.* at 28.)  She further observed that Claimant "has had generally normal mental status examinations." (*Id.*)

The undersigned **FINDS** that the ALJ properly evaluated Claimant's subjective complaints about his pain and other symptoms against the record evidence.  The ALJ is entitled to "judge[] [Claimant's] credibility in light of findings in his medical record which were inconsistent with his allegations." *Karnes*, 2015 WL 1477891, at *4; *see Tanner v. Comm'r*, 602 F. App'x 95, 99 (4th Cir. 2015) (concluding that ALJ's "adverse credibility determination" supported by substantial evidence where ALJ "discounted the extent of [the claimant's] subjective complaints because they were inconsistent with the medical evidence").  The ALJ pointed out that during the relevant period, Claimant's conditions were either well controlled or required little to no treatment, and physical and mental status examinations were largely normal—all of which are acceptable reasons to discredit a claimant's subjective complaints.  *Brooks v. Comm'r*, No. SAG-13-cv-2218, 2014 WL 4461489, at *3 (D. Md. Sept. 9, 2014); *Alfano v. Colvin*, No. 2:13-cv-330, 2014 WL 3871221, at *15–*16 (E.D. Va. Aug. 5, 2014) (report and recommendation of magistrate judge).

## C. *Claimant's Capacity for Sedentary Work*

Lastly, Claimant contends that his carpal tunnel, use of a cane, and mental impairments preclude sedentary work according to SSR 96-9p.  (ECF No. 9 at 7–8.)  SSR 96-9p advises an ALJ about how to determine whether an individual whose RFC indicates

that he is limited to less than the full range of sedentary work should be deemed "disabled." 1996 WL 374185 (July 2, 1996). To that end, it states, "the ability to do even a limited range of sedentary work does not in itself establish disability in all individuals, although a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." *Id.* at *3 (emphasis deleted). Claimant seems to argue that the limitations caused by his carpal tunnel, use of a cane, and mental impairments "significantly erode" the "unskilled sedentary occupational base." (ECF No. 9 at 7–8.)

However, as the Commissioner points out, "[a]lthough SSR 96-9p explains that the use of a medically required hand-held assistive device and manipulative limitations could erode the occupational base for sedentary work, the ruling does not state that such limitations would preclude the performance of all sedentary jobs." (ECF No. 10 at 15.) The same is true for mental limitations or restrictions. SSR 96-9p, 1996 WL 374185, at *9 ("A less than substantial loss of ability to perform . . . basic [mental] work activities may or may not significantly erode the unskilled sedentary occupational base" and mandate a finding of disability.) When the ALJ's RFC assessment indicates that the claimant has such limitations, the ALJ must consider "the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base" by consulting the medical–vocational rules or "various authoritative written resources." *Id.* at *5, *9. The ALJ may also "use the resources of a [VE] . . . to provide . . . [a]n analysis of the impact of the RFC upon the full range of sedentary work, which the [ALJ] may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy." *Id.* at *9.

The ALJ utilized a VE in this case, and the VE testified that an individual with Claimant's RFC, age, education, and work experience would be capable of performing other work—*i.e.*, that the limitations the ALJ found did not significantly erode the occupational base as to preclude sedentary work.  (Tr. at 31; *see id.* at 64–72.)  The ALJ was entitled to rely on the VE's testimony.  *See McCallister v. Astrue*, No. 2:07-cv-00309, 2008 WL 2858535, at *12 (S.D.W. Va. July 22, 2008) (proposed findings and recommendation of magistrate judge) ("The ALJ called a [VE], and the [VE] testified that Claimant could perform certain light jobs even with the sit/stand limitation described by the ALJ.  As such, Claimant's argument that remand is in order to determine the extent of any erosion in the occupational base because of Claimant's need for a sit/stand option is unconvincing.").  Of note, although Claimant generally challenges the ALJ's RFC assessment on the bases that she made improper findings as to the severity of his impairments and his subjective complaints about his symptoms—challenges that the undersigned has already addressed and rejected—he has not offered any evidence to demonstrate that any of the limitations described in the RFC assessment do not reflect his actual abilities.  (ECF No. 9 at 7–9.)  Likewise, he has not asserted that the ALJ's questions to the VE did not accurately represent his limitations.  (*Id.*)  In other words, there is no reason to suspect that the VE's testimony about Claimant's ability to perform the jobs she identified was unreliable.  Accordingly, the undersigned **FINDS** that the ALJ properly concluded at step five of the sequential evaluation process that Claimant was capable of performing other work.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's

decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: January 17, 2020

Dwane L. Tinsley
United States Magistrate Judge